UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DANE BELTON, | ) |
| Plaintiff, | ) ) ) |
| | ) No. 19 C 8200 |
| v. | ) ) |
| SEAN WYANT, Parole Commander, and DAMIAN LILE, Parole Agent, | ) Judge Rebecca R. Pallmeyer ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Dane Belton filed this civil rights action under 42 U.S.C. § 1983, claiming that Defendants Sean Wyant and Damian Lile, two of his parole officers, were deliberately indifferent to his complaints about what Belton believes was wrongful extension of his term of mandatory supervised release. The Defendants have moved for summary judgment on Belton's second amended complaint, arguing that (1) they did not act with deliberate indifference toward Belton's verbal and written grievances, and (2) the discharge date for Belton's term of mandatory supervised release was extended properly. The court grants the Defendant's motion [78] for the reasons given below.

## PROCEDURAL HISTORY

The court previously screened each of Belton's complaints under 28 U.S.C. § 1915A.[1] In the court's first two orders, it dismissed Belton's initial complaint and first amended complaint, respectively, for failure to state a claim [14, 22]. In the court's third order, dated June 4, 2020, it significantly trimmed Belton's second amended complaint for the same reason, leaving only his

---

[1] Belton was incarcerated at Southwestern Illinois Correctional Center at the time he filed each complaint [1, 16, 25], but he was released on parole on November 2, 2021, just a few weeks before the Defendants filed this motion. (Decl. of Tammy Garcia, Ex. 2 to Defs.' Statement of Undisputed Material Facts [80-2] ¶ 5.) *See also Individuals in Custody Search*, ILL. DEP'T OF CORR. (last visited May 27, 2022), https://www2.illinois.gov/idoc/Offender/Pages/Inmate Search.aspx.

deliberate indifference claim against Defendants Wyant and Lile [27]. The scope of the case has not changed since that order. Following discovery, the Defendants filed a motion for summary judgment and accompanying papers on November 22, 2021 [78–81].[2] Belton never responded.

## BACKGROUND

The events in question began on March 14, 2018, when Belton was released from Pinckneyville Correctional Center, a facility of the Illinois Department of Corrections ("IDOC").[3] (Defs.' Statement of Undisputed Material Facts [80] (hereinafter "DSOF") ¶ 1.) Upon discharge, Belton was subject to a one-year term of Mandatory Supervised Release ("MSR"), which was then set to conclude on March 14, 2019. (*Id.* ¶ 2.)

Almost immediately after Belton's release from Pinckneyville, he violated the conditions of MSR. On March 26, 2018, he was taken into custody for having been "AWOL" since March 22 and for drug usage on March 26. (DSOF ¶ 3.) An IDOC officer released Belton after approving him for a diversion program. (*Id.* ¶ 4.) Over the next several months, however, Belton repeatedly failed the drug tests that were required as a condition of his MSR. (*Id.* ¶ 5; Am. Parole Violation Report, Ex. 11 to DSOF [80-10] at 1.)

On November 7, 2018, Belton was arrested on an IDOC parole warrant and detained at the Macon County Jail. (DSOF ¶ 6; Dep. of Dane B. Belton, Ex. 1 to DSOF [80-1] (hereinafter "Belton Dep.") at 35:5–43:14.) He was then transferred to IDOC custody and incarcerated in the Northern Reception Center ("NRC"), a facility within IDOC's Stateville Correctional Center. (DSOF ¶ 7; Belton Dep at 43:16–46:19.)

On January 3, 2019, approximately two months later, Belton appeared before a member of the Prisoner Review Board for a parole revocation hearing. (DSOF ¶ 7; Belton Dep. at 47:12–

---

[2] Defendants included, among these papers, a notice explaining the rules that govern summary judgment [81]. *See* L.R. 56.2.

[3] The details of Belton's incarceration at Pinckneyville are not material to his claims in this case.

2

48:20.) The Board declared Belton to be a violator of his MSR conditions as of March 26, 2018. (DSOF ¶ 8; Prisoner Review Board Order, Ex. 6 to DSOF [80-5] at 2.) The order stated that Belton's MSR would resume on January 8, 2019, five days after the hearing. (Prisoner Review Board Order at 2; Belton Dep. at 49:6–18.) When Belton was released from Stateville on January 8, he was given documents showing that his MSR discharge date had been extended from March 14, 2019 (the original cutoff date) to August 24, 2019. (DSOF ¶¶ 9–10, 33–34; Decl. of Tammy Garcia, Ex. 2 to DSOF (hereinafter "Garcia Decl.") [80-2] ¶¶ 5–6.) Belton believed that the NRC records office had erred in calculating the new date. (Belton Dep. at 61:8–23.)

Defendant Lile, who was employed by IDOC as a Parole Agent, was assigned as Belton's primary parole officer. (Decl. of Damian R. Lile, Ex. 3 to DSOF [80-3] (hereinafter "Lile Decl.") ¶¶ 2–3.) Defendant Wyant was employed as a Parole Commander in the same IDOC office. (Decl. of Sean Wyant, Ex. 4 to DSOF [80-4] (hereinafter "Wyant Decl.") ¶¶ 3–4.)

Belton met with Lile within a few days of his release from the NRC. (*See* DSOF ¶¶ 10–11; Parolee History Notes, Ex. 8 to DSOF [80-7] at 50–51; Belton Dep. at 56:17–57:21.) According to Belton, he told Lile that he believed the new MSR discharge date had been miscalculated, and Lile responded that because parole officers are not responsible for making such calculations, Belton should instead contact the NRC records office about any possible issues. (Belton Dep. at 57:22–58:7, 62:6–18.) Lile stated in a declaration that he did not recall any such conversations with Belton. (Lile Decl. ¶ 6.) Nor is there any reference to a conversation about this calculation with Lile (or any other IDOC officer) in the notes that IDOC maintained on Belton. (*See* Parolee History Notes at 49–53.) For purposes of summary judgment, the court nevertheless assumes Belton's account is truthful.

Belton testified that, as Lile directed, he promptly called the NRC records office, but an NRC employee told him the office could not have any contact with a parolee, and that Belton should instead raise the calculation issue with his parole officer. (Belton Dep. at 64:1–68:12.) Belton does not know which employee he spoke with, and a supervisor from the NRC records

3

explained that it was not standard practice for an NSR officer to respond to a parolee's call in the way that Belton described. Instead, if a parolee were to call the records office regarding an alleged miscalculation of their MSR discharge date, the NSR employee would locate the parolee's file and contemporaneously review it for accuracy. (Garcia Decl. ¶¶ 8–9.)

According to Belton, the next time he met with Lile during a routine visit, he explained that he had been unable to discuss the calculation issue with the NRC records office. (Belton Dep. at 68:21–70:18.) Again, Lile has no recollection of this conversation (Lile Decl. ¶ 6), and there is no reference to such a conversation with Lile or any other officer in the IDOC notes. (*See* Parolee History Notes at 53–56.)

The next month, on February 15, 2019, Belton had a parole meeting with Wyant. (DSOF ¶ 20.) According to Wyant's notes from that meeting, Belton asked Wyant to explain why his MSR discharge date had been extended until August, but Belton, who was apparently intoxicated, could not understand Wyant's explanation. (*Id.* ¶¶ 20–21; Wyant Decl. ¶ 8; Parolee History Notes at 56.) Belton later recalled this meeting differently, stating that Wyant did not engage meaningfully with Belton's questions about the possible miscalculation of his MSR discharge date. (Belton Dep. at 87:11–90:1.) Belton also claimed that he delivered a handwritten grievance to the parole office the next day. (*Id.* at 71:12–72:21, 78:9–79:18.) And he said that, a few days later, Lile confirmed during their routine meeting that he and Wyant had seen the grievance. (*Id.* at 90:15–92:12.) No such document was produced in discovery, however. There is no reference to such a grievance in the IDOC notes, and neither Wyant nor Lile could later recall having seen or discussed it. (Parolee History Notes at 56–57; Lile Decl. ¶¶ 6, 8–9; Wyant Decl. ¶ 7; Belton Dep. at 79:4–6.)

On March 29, 2019, Belton was arrested on drug charges by police in Decatur, Illinois, and transferred to the Macon County Jail. (DSOF ¶¶ 23–24.) Approximately one month later, on April 28, 2019, he mailed a written grievance to the Decatur parole office. (*Id.* ¶¶ 27–28; Belton

4

Dep. at 111:13–112:7.) In this grievance, Belton alleged that his MSR discharge date had been miscalculated. (Belton Dep. at 112:17–114:23.)[4]

Wyant and Lile briefly discussed Belton's grievance over email on May 2, a few days later. Lile reported that he had directed Belton to the grievance procedure. (May 1, 2019 Email from Lile to Wyant, Ex. 9 to DSOF [80-8].) On May 6, Wyant forwarded Belton's grievance by email to Tracy Buckley-Jones of the Prisoner Review Board. (May 6, 2019 Email from Wyant to Buckley-Jones, Ex. 9 to DSOF.) Buckley-Jones told Wyant that she would address the concerns raised in Belton's grievance. (*Id.*)

Belton has not filed a response to the Defendants' motion for summary judgment, and has not explained why he believes his MSR discharge date was miscalculated. Defendants, on the other hand, have submitted a declaration from the supervisor of the NRC records office, who reviewed Belton's documents and confirmed that his MSR discharge date was in fact extended correctly. (Garcia Decl. ¶ 7.) The calculation occurred in two steps: First, Belton lost 7 months and 11 days of MSR time for the period from March 26, 2018 (as of which he was deemed a parole violator) to November 7, 2018 (when he was arrested on the parole warrant). Second, that loss of time was offset by 2 months and 1 day to account for the period that Belton was incarcerated in the NRC from November 7, 2018, to January 8, 2019. (*Id.* ¶¶ 5–7; *see also* DSOF ¶ 33.) The result was a lengthening of Belton's MSR term by a total of 5 months and 10 days— an amount that is accurately reflected in the extension of Belton's discharge date from March 14, 2019, to August 24, 2019.

## **LEGAL STANDARD**

The standards that govern a motion for summary judgment are familiar. The court should grant such a motion only if there is no genuine dispute of material fact and the moving party is

---

[4] Around the same time, on April 30, Belton's fiancée left a phone message for Wyant, requesting a copy of Belton's parole violation report. (DSOF ¶ 25.) After a few attempts to get in touch with the fiancée, Wyant eventually spoke with her on May 1 and explained why Belton's MSR discharge date had been extended. (*Id.* ¶ 26.)

entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Courts should draw all inferences in favor of the nonmoving party, but a nonmovant is "not entitled to the benefit of inferences that are supported only by speculation or conjecture." *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, "the nonmoving party must set forth specific facts showing a genuine issue for trial." *Abrego v. Wilkie*, 907 F.3d 1004, 1011–12 (7th Cir. 2018) (citing *Matsushita*, 475 U.S. at 587). "If there is no triable issue of fact on even one essential element of the nonmovant's case, summary judgment is appropriate." *Boss*, 816 F.3d at 916.

This court's Local Rule 56.1 requires a party moving for summary judgment to file a statement of material facts as to which the moving party contends there is no genuine issue for trial. L.R. 56.1(a); *see also* FED. R. CIV. P. 56(c)(1). If the nonmoving party fails to respond to the Rule 56.1 statement, those facts are deemed admitted to the extent they are supported by record evidence. *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012). A plaintiff's *pro se* status does not excuse him from complying with federal and local procedural rules, but failure to comply does not "automatically result in judgment for the movant." *Id.* at 884. The movant "must still demonstrate that it is entitled to judgment as a matter of law." *Id.* Moreover, the court still views the facts in the light most favorable to the nonmovant, drawing all reasonable inferences in his favor. *Id.*

## **DISCUSSION**

A government officer may violate a parolee's Eighth Amendment rights if, through deliberate indifference, the officer causes the parolee to be subject to the restrictive conditions of mandatory supervised release beyond the date on which those conditions should lawfully end.

6

*See Hankins v. Lowe*, 786 F.3d 603, 605 (7th Cir. 2015) (noting that "[p]arole is a form of custody").

It is undisputed that employees in the NRC records office—not Defendants Wyant or Lile—were responsible for calculating the discharge date for Belton's term of MSR, but that fact alone does not insulate the Defendants from liability. As this court explained in its third screening order, "[o]nce an official is alerted to an excessive risk that the individual's constitutional rights are being violated, . . . he must exercise the authority of his office to address it." (*See* Order of June 4, 2020 [27] (citing *Perez v. Fenoglio*, 792 F.3d 768, 781–82 (7th Cir. 2015) ("[D]eliberate indifference may be found where an official knows about unconstitutional conduct and facilitates, approves, condones, or 'turn[s] a blind eye' to it.")).) With that principle in mind, the court allowed Belton to proceed on his deliberate indifference claim given his plausible allegations that he repeatedly alerted the Defendants to miscalculated discharge dates and that they took no meaningful steps to address the error.

On summary judgment, the Defendants make two arguments. They argue, first, that they were not deliberately indifferent to Belton's verbal and written grievances about the miscalculated MSR discharge date. After all, they say, the record shows that they discussed the issue with Belton when he raised it, and they acted on his written grievance by forwarding it to an employee in the NRC records office. Second, the Defendants argue that the MSR discharge date had been calculated properly in the first place, precluding any Eighth Amendment harm to Belton.

The second argument carries the day. As discussed above, the Defendants have filed a declaration submitted by a supervisor who works in the NRC records office. (*See* Garcia Decl.) That declaration explains how and why Belton's discharge date was extended based on the Prisoner Review Board's finding that he had violated the conditions of his MSR. Belton has not rebutted this declaration; indeed, he has not responded to the Defendant's motion at all. Absent any evidence that Belton was subject to MSR conditions beyond their lawful end date, the Defendants cannot be held liable for deliberate indifference to Belton's complaints.

## **CONCLUSION**

The Defendants' motion for summary judgment [78] is granted.[5]

ENTER:

Dated: May 27, 2022

_____
REBECCA R. PALLMEYER
United States District Judge

---

[5] If Belton wishes to appeal, he must file a notice of appeal with this court within thirty days of the entry of judgment. *See* FED. R. APP. P. 4(a)(1). If Belton appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. *See Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). If the appeal is found to be non-meritorious, Belton could be assessed a "strike" under 28 U.S.C. § 1915(g). If a prisoner accumulates three "strikes" because three federal cases or appeals have been dismissed as frivolous or malicious, or for failure to state a claim, the prisoner may not file suit in federal court without pre-paying the filing fee unless he is in imminent danger of serious physical injury. *Id.* If Belton seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* in this court. *See* FED. R. APP. P. 24(a)(1).

Belton need not bring a motion to reconsider this court's ruling to preserve his appellate rights. If he does wish to seek reconsideration, Belton may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment, FED. R. CIV. P. 59(e); that time period cannot be extended. *See* FED. R. CIV. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* FED. R. APP. P. 4(a)(4)(A)(iv). A Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order, FED. R. CIV. P. 60(c)(1)—a time period that also cannot be extended. *See* FED. R. CIV. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* FED. R. APP. P. 4(a)(4)(A)(vi).